

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Motorola XT2005-4 cell phone<br>IMEI No. 352177100627165 | )<br>)<br>) Case No.   20MJ1394<br>)<br>)<br>) |

### APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the ____Southern____ District of ____Califorina____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Secs. 952, 960 | Importation of a Controlled Substance |

The application is based on these facts:
See Attached Affidavit of HSI Special Agent Carmen Jacobsen, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Carmen Jacobsen, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____telephone____ *(specify reliable electronic means)*.

Date:  4/13/20

*Judge's signature*

City and state: San Diego, California    Hon. Jill L. Burkhardt, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent Carmen Jacobsen, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

    Samsung SMJ-J327T1 cell phone

    IMEI: 359479095191857

    ("Target Device 1"), as described in Attachment A-1

    Motorola XT2005-4 cell phone

    IMEI No. 352177100627165

    ("Target Device 2"), as described in Attachment A-2

as further described in Attachments A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960 and 963 as further described in Attachments B-1 and B-2. The requested warrant relates to the investigation and prosecution of Abraham BARAJAS-Carranza ("Defendant") for importing approximately 65.28 kilograms (143.92 pounds) of Methamphetamine from Mexico into the United States. Target Device 1 and Target Device 2 (collectively, the Target Devices) are currently in the custody of Homeland Security Investigations and located at 2255 Niels Bohr Court, San Diego, CA 92154.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security

1

Investigations (HSI) since its inception and started with INS in 1992. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles that enter the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual ("the driver") responsible for driving the vehicle containing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the driver regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the driver to remotely monitor the progress of the narcotics, provide instructions to the driver and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the driver to provide further instructions regarding the transportation of the narcotics to a destination within the United States.

6.  Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a.  tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

7. On April 12, 2020, at approximately 9:20 AM, defendant Abraham BARAJAS-Carranza, ("BARAJAS"), a citizen of Mexico with a Legal Permanent Resident Card, applied for entry into the United States from Mexico through the Otay Mesa Port of Entry in vehicle lane 04. BARAJAS was the driver, sole occupant, and registered owner of a 2019 Toyota Tundra ("the vehicle") bearing California license plates.

8. A Canine Enforcement Officer ("CEO") was conducting pre-primary inspection with a Human and Narcotics Detection Dog ("HNDD") when the HNDD indicated to a trained odor emitting from the passenger side rear door of the vehicle. The CEO began inspected the vehicle. The CEO opened the back passenger door and pulled the plastic panel back from the door frame. The CEO observed packages concealed inside the door. The CEO informed the backup CEO of the alert and the backup CEO responded.

9. The backup CEO asked BARAJAS for his identification and BARAJAS provided his Legal Permanent Resident Card and driver's license. The backup CEO asked BARAJAS where he was headed and BARAJAS stated Riverside, California. BARAJAS gave two negative declarations to the backup CEO. The vehicle and BARAJAS were referred for further inspection

10. The vehicle was sent to the Z-Portal X-Ray machine and the Customs and Border Protection Officer ("CBPO") operating the Z-Portal observed anomalies in the vehicle's gas tank and doors. The vehicle was referred for further inspection.

11. Further inspection of the vehicle resulted in the discovery of 88 packages, weighing approximately 65.28 kg (143.92 lbs), concealed throughout the vehicle. Packages were located in the driver side rear door, passenger side rear door, behind the rear seat back rest, and the gas tank. A sample of the contents of the packages was field tested, which yielded positive properties for the characteristics of methamphetamine. BARAJAS was placed under arrest at approximately 11:00 AM.

12. BARAJAS stated he has been sick for approximately three weeks, which has turned into an infection. Due to these factors, an interview was not conducted.

4

13. BARAJAS was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance, and was issued a Notice to Appear for May 11, 2020, at 1:30 PM.

14. The CBPO's reports do not indicate whether the Target Devices were seized directly from BARAJAS or from his car. However, they were amongst his personal effects. In my training and experience, I know that when a person is taken to the security office and their car searched, CBP will gather all the personal effects from the person and his or her car and secure them. If the person is arrested, those items are seized. BARAJAS was the only person in his car at the time of arrest.

15. HSI Special Agents asked BARAJAS where his two cell phones were located at the time of his arrest. BARAJAS stated that the grey Samsung cell phone was in the center console and BARAJAS believed the black Motorola was in one of the door holders.

16. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Devices. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Devices to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and

months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on March 11, 2020, up to and including April 12, 2020.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

### CONCLUSION

21. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Devices will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachments A-1 and A-2 and seize the items listed in Attachments B-1 and B-2 using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Carmen Jacobsen
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1. this 13th of April 2020.

Honorable Jill L. Burkhardt
United States Magistrate Judge

# ATTACHMENT A-2

## PROPERTY TO BE SEARCHED

The following property is to be searched:

>Motorola XT2005-4 cell phone
>
>IMEI No. 352177100627165
>
>"Target Device 2"

Target Device 2 is currently in the possession of Homeland Security Investigations, located at 2255 Niels Bohr Court, San Diego, CA 92154.

# **ATTACHMENT B-2**

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of March 11, 2020, up to and including April 12, 2020:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.